UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
MICHAEL VORMITTAG,

           Plaintiff,

      - against -

UNITY ELECTRIC CO., INC.,

           Defendant.
------------------------------------------------------------- x

MEMORANDUM & ORDER

12 CV 4116 (RJD) (RLM)

DEARIE, District Judge

In this employment discrimination and retaliation suit, plaintiff Michael Vormittag alleges that defendant Unity Electric Co., Inc. ("Unity") used a required reduction in force as a pretext to fire him because of his age and because his daughter filed a sex discrimination charge against the company. He asserts claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). Unity moves for summary judgment. For the reasons below, the Court grants in part and denies in part Unity's motion.

## BACKGROUND

Viewed in the light most favorable to the plaintiff, the record reveals the following facts, which are undisputed except as otherwise noted. In January 2010, Mr. Vormittag was fired from Unity as part of an announced large-scale reduction in force after working there for twenty-three years. He was sixty-two-years-old at the time. His daughter, also a former Unity employee, had earlier filed a sex discrimination charge against the company in November 2009. At issue is whether Unity used the need to furlough and lay off employees as a pretext for firing Mr.

Vormittag, when it actually did so to discriminate against Mr. Vormittag because of his age and because his daughter had filed a charge of sex discrimination against the company.

Unity is in the business of commercial and industrial design and implementation, and Mr. Vormittag was employed there as an A-Rated Journeyperson electrician from November 20, 1987 until January 8, 2010. An A-Rated Journeyperson is a unionized position, subject to a collective bargaining agreement. As part of that agreement, A-Rated Journeypersons at Unity must go on furlough for a designated number of weeks each year if there is unemployment in the union ranks to ensure that all the electricians have work opportunities. Def.'s 56.1 Statement ¶¶ 7–8. Such furloughs were common, and Nicholas DeMaio, Unity's Superintendent, was responsible for coordinating the furlough schedules.

2009 was a difficult year for the construction industry. Id. ¶¶ 4–5, 9. Given the overall unemployment levels, the Joint Industry Board of the Electrical Industry, which consists of fifteen Union and fifteen Employer representatives, required Unity to furlough its A-Rated Journeypersons for fourteen weeks, with 20% to be furloughed for a four-week period starting on January 4, 2010. Id. ¶¶ 9–11. Unity was required to hire replacement electricians for all those furloughed and employ them for twenty-six consecutive weeks, or fire 25% of its workers at the beginning of 2010. Id. ¶ 30. In the first week of January 2010, Unity determined it could not retain all the required replacements for twenty-six weeks, so it was forced to lay off 25% of its electricians in early January. Id. ¶ 32.

Mr. DeMaio had the task of selecting the workers to place on furlough and then lay off; and he chose Mr. Vormittag as one such employee. Mr. DeMaio's reasoning in choosing Mr. Vormittag is at the center of this dispute, and the parties present two very different versions of how he came to be selected.

2

Unity highlights Mr. DeMaio's deposition testimony that he based his furlough and layoff decisions on minimizing the impact on the projects Unity had in progress at that time and retaining as many foremen and sub-foremen as possible because those are supervisory positions. Phillips Decl. Ex. B (DeMaio Dep. Tr.), at 119:3–120:3. It stresses that at the time of the furlough, Mr. Vormittag was not a foreman or sub-foreman, and he was working on a job at Goldman Sachs that was winding down. Moreover, most of the work that remained for the Goldman Sachs job was "data work," and Mr. DeMaio believed that other A-Rated Journeypersons on the Goldman Sachs job were more proficient in this type of work than Mr. Vormittag. Def.'s 56.1 Statement ¶ 28.

Mr. Vormittag's version of events takes us back to November 2009, when his daughter Kerry Arciuolo filed a sex discrimination charge against Unity with the New York State Division of Human Rights after being fired from the company.[1] Mr. Vormittag alleges that days later Mr. DeMaio asked to speak with him in a private room, even though Unity's unwritten policy was that Mr. DeMaio would only speak with an A-Rated Journeyperson if a foreman was present. See id. ¶ 65; Phillips Decl. Ex. B, at 63:11–19. Mr. Vormittag asserts that Mr. DeMaio asked him to get his daughter to drop the charge, but Mr. Vormittag replied that she was an adult and that he could not get her to do so. At his deposition, Mr. Vormittag testified that Mr. DeMaio then "looked down at the floor like he was in disgust with me" and that he told him Unity had

---

[1] Ms. Arciuolo worked at Unity for approximately ten years. She was fired in October 2009, shortly after she returned from maternity leave. Def.'s 56.1 Statement ¶¶ 57–58. According to Ms. Arciuolo, Unity told her that she could take a total of twelve weeks maternity leave, which she did. Once she returned she was told that she would "probably like to stay at home" because she was a new mother and then fired the next day. Phillips Decl. Ex. C, at D-275. Unity maintains that Ms. Arciuolo was told that she was only entitled to eight weeks maternity leave and that she never communicated with Unity about taking additional time. Moreover, while Ms. Arciuolo was on leave Unity had to reduce its work force and once she returned there was no job available for her due to economic conditions. See id. at D-275–76.

3

never been sued before. Phillips Decl. Ex. A (Vormittag Dep. Tr.), at 47:10–14. Mr. Vormittag presents a more troubling version of events in his affidavit: he alleges that Mr. DeMaio told him that "times were tough and if the company had to hire a lawyer and/or pay a judgment people could lose their jobs. He further stated that people close to [Mr. Vormittag's] daughter could lose their jobs." Vormittag Aff. ¶ 24.

In addition, Mr. Vormittag calls into question Mr. DeMaio's purported reasoning in choosing to furlough and fire him in early January 2010. He notes that Mr. DeMaio initially testified at his deposition that "there was no rhyme or reason" he chose to fire Mr. Vormittag over somebody else and that he "just had to meet a number." Phillips Decl. Ex B., at 114:17–18. In contrast, Mr. DeMaio spoke about the need to maintain project progress and retain those in supervisory positions when questioned by Unity's attorney after a recess. See id. at 117:24–120:3.

Mr. Vormittag filed the instant action alleging age discrimination and retaliation. Unity argues that Mr. Vormittag was furloughed and fired due to the large-scale reduction in force; his age and his daughter's discrimination charge played no role in Mr. DeMaio's decision making.

## DISCUSSION

Summary judgment is only appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the burden of showing that he or she is entitled to summary judgment." Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). In determining whether the moving party has met this burden, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty

4

Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted). If the moving party meets its burden, the non-moving party must tender evidence demonstrating a genuine issue for trial, Salahuddin v. Goord, 467 F.3d 263, 272–73 (2d Cir. 2006), and must offer more than "conclusory allegations or unsubstantiated speculation" to defeat summary judgment, DeFabio v. E. Hampton Union Free Sch. Dist., 623 F.3d 71, 81 (2d Cir. 2010) (quoting Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005)).

A.  **Age Discrimination**

Courts use the familiar McDonnell Douglas burden-shifting framework to analyze employment discrimination claims under federal and state law.[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff has the initial burden of establishing a prima facie case that: 1) he belonged to a protected class; 2) he is qualified for the position; 3) he suffered an adverse employment action; 4) under circumstances giving rise to an inference of discriminatory intent. See id. at 802. The plaintiff's burden of proof at this stage "has been characterized as minimal and de minimis." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks omitted). If the plaintiff establishes a

---

[2] Discrimination claims under the NYCHRL are analyzed separately:

> [T]he plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason. The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that discrimination played no role in its actions.

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 n.8 (2d Cir. 2013) (internal quotation marks and alterations omitted).

As discussed infra, Mr. Vormittag has not produced sufficient evidence to survive summary judgment for his age discrimination claim under either standard.

5

prima facie case, the defendant then has the burden "to articulate some legitimate, nondiscriminatory reason" for its actions. McDonnell Douglas Corp., 411 U.S. at 802.

If the defendant articulates such a reason, the burden shifts back to the plaintiff, who must establish that the defendant's proffered reason was a mere pretext for discrimination. To do so, "[t]he plaintiff must produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons presented by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Mavrommatis v. Carey Limousine Westchester, Inc., 476 F. App'x 462, 465 (2d Cir. 2011) (internal quotation marks omitted). In addition, in an age discrimination case, the plaintiff must demonstrate that "age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009).

Even assuming Mr. Vormittag has made out a prima facie case of age discrimination, Unity's reduction in force is a legitimate, non-discriminatory reason for his termination. See Parcinski v. Outlet Co., 673 F.2d 34, 36–37 (2d Cir. 1982). As such, Mr. Vormittag has the burden of showing his layoff was a prextext for age discrimination. But the numbers simply do not support an inference that age discrimination was the but-for cause, or indeed played any role, in Mr. DeMaio's decision to lay off Mr. Vormittag.

The ADEA protects employers who are at least forty-years-old, see 29 U.S.C. § 631(a), and Unity's Union has a policy that one-in-ten workers on a job must be fifty-five-years-old or older, see Phillips Decl. Ex. A, at D-142. As an initial matter, Unity has an older workforce: out of the 150 furlough-eligible electricians that Unity employed in January 2010, only twenty-eight were under forty and nine were fifty-five or older. See Phillips Decl. Ex. A, at Ex. 10. Unity laid off thirty-eight of those workers, as required by the Joint Industry Board. Of those thirty-

eight, nine were under forty; and Unity retained five of its nine workers who were fifty-five or older. See id. Thus, following the reduction in force, the majority of furlough-eligible workers remained over forty. Cf. Deebs v. Alstom Transp., Inc., 550 F. Supp. 2d 385, 391 (W.D.N.Y. 2008) (Larimer, J.), aff'd 346 F. App'x 654 (2d Cir. 2009) (demographics did not imply age discrimination when, after a reduction in force, most of the workforce remained over forty).

At the Goldman Sachs worksite, only ten out of the thirty-nine workers were under forty, and nine were fifty-five or older. Seventeen workers at the site were laid off as part of the Joint Industry Board Mandate. Of those seventeen, four were fifty-five or older and four were under forty. Phillips Reply Decl. Ex. A. Thus, there was an even divide between the younger and older workers selected for layoff; and, contrary to Mr. Vormittag's contentions, both before and after the layoff, the worksite met the Union requirement that one-in-ten workers be fifty-five-years-old or older. See id.; Def.'s 56.1 Statement ¶¶ 52–53.

Mr. DeMaio's age further undermines Mr. Vormittag's age discrimination claim. "Courts draw an inference against discrimination where the person taking the adverse action is in the same protected class as the effected employee." Walder v. White Plains Bd. of Educ., 738 F. Supp. 2d 483, 501 (S.D.N.Y. 2010) (Peck, Mag. J.) (internal quotation marks omitted) (citing cases). Mr. DeMaio was sixty-four-years-old, two years older than Mr. Vormittag, when he made his furlough and layoff determinations. Under these circumstances, Mr. Vormittag has failed to show that Unity's required reduction in force was a pretext for age discrimination and cannot survive summary judgment on this claim.

**B. Retaliation**

Title VII's anti-retaliation provision prohibits any employer action that may dissuade a reasonable worker from making or supporting a charge of discrimination. This provision is

7

meant to further "Title VII's goal of a workplace free from discrimination . . . by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of Title VII's basic guarantees." Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 567 (2d Cir. 2011) (internal quotation marks and alterations omitted).

In Thompson v. North American Stainless, LP, the Supreme Court determined that such prohibited actions include retaliation against third parties that would have the effect of dissuading a reasonable employee from engaging in protected activity. --- U.S. ---, 131 S. Ct. 863 (2011). It noted that "firing a close family member will almost always meet" this test. Id. at 868. The Court further held that the "aggrieved" third party has standing to bring a Title VII retaliation claim against the employer even though the third party has not engaged in protected activity himself. That is because injuring the third party is the "unlawful act by which the employer punished" the person engaging in the protected activity. Id. at 870.

Here, Mr. Vormittag has standing to bring a third-party retaliation claim against Unity. Mr. Vormittag's daughter, Ms. Arciuolo, worked at Unity for approximately ten years and was laid off in October 2009, shortly after returning from maternity leave. She filed a charge of sex discrimination against the company with the New York State Division of Human Rights on November 2, 2009, which was still pending at the time Mr. Vormittag was placed on furlough.[3] Ms. Arciuolo clearly engaged in protected activity by filing a sex discrimination charge against Unity after she was fired. Moreover, Unity's firing her father is the type of adverse employment action that "almost always" deters a reasonable employee from engaging in protected activity; and if Unity did so to retaliate against Ms. Arciuolo, he was aggrieved within the meaning of

---

[3] The Department issued Ms. Arciuolo a Probable Cause finding in July 2011, see Phillips Decl. Ex. C, but dismissed her claim after a hearing before an Administrative Law Judge, see id. Ex. D.

8

Title VII. Id. at 868; see Lopez v. Four Dee, Inc., No. 11-CV-1099, 2012 WL 2339289, at *2 (E.D.N.Y. June 19, 2012) (Weinstein, J.). Therefore, we move to the McDonnell Douglas analysis.

Like discrimination claims, federal and state law retaliation claims are analyzed under the McDonnell Douglas framework.[4] We address each prong of the analysis in turn. In this context, a plaintiff's prima facie case requires showing that: 1) he (or a third party) engaged in protected activity; 2) the employer was aware of that activity; 3) he suffered an adverse employment action; and 4) there was a causal connection between the protected activity and the adverse employment action. Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010). As with age discrimination claims, the plaintiff must establish that the protected activity was the but-for cause of the adverse employment action to satisfy the causation requirement. Univ. of Tex. Sw. Med. Ctr. v. Nassar, --- U.S. ---, 133 S. Ct. 2517, 2534 (2013). This causal connection may be established "indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus." DeCintio v. Westchester Cnty. Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987) (internal citations and emphases omitted); see Zann Kwan, 737 F.3d at 845 ("[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage on summary judgment or at trial indirectly through temporal proximity.").

---

[4] As with age discrimination claims, retaliation claims under the NYCHRL are analyzed separately. However, as discussed infra, Mr. Vormittag has produced sufficient evidence to survive summary judgment under the more demanding McDonnell Douglas analysis. Therefore, we only analyze his claim under that framework.

Mr. Vormittag was furloughed approximately two months after Ms. Arciuolo filed the charge against Unity.[5] Unity is correct that "[d]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation" if the plaintiff is relying solely on temporal proximity to establish the causal connection. Brown v. City of New York, No. 11-CV-2915, 2013 WL 3789091, at *17 (S.D.N.Y. July 19, 2013) (Engelmayer, J.) (internal quotation marks omitted) (citing cases). However, the Second Circuit, "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [and it has] previously held that five months is not too long to find the causal relationship." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010).

Mr. Vormittag's timing is right on the border of two months, so it seems harsh and unrealistic to say he has failed to meet his de minimis burden of establishing a prima facie claim. Moreover, he testified that Mr. DeMaio spoke with him in private—against Unity's "unwritten rule" that a foreman be present for conversations between the Superintendent and A-Rated Journeypersons—to urge him to get his daughter to drop her charge against Unity. See Phillips Decl. Ex B, at 66:11–19. He also tendered an affidavit that Mr. DeMaio told him that people close to Mr. Vormittag's daughter could lose their jobs. These circumstances provide more direct evidence of retaliation.

---

[5] Ms. Arciuolo filed her sex discrimination charge with the New York State Division of Human Rights on November 2, 2009. Def.'s 56.1 Statement ¶ 59. Days later, Mr. DeMaio allegedly spoke with Mr. Vormittag about getting Ms. Arciuolo to drop the charge against Unity. Pl.'s 56.1 Statement ¶ 19. Mr. Vormittag was furloughed on January 4, 2010 and fired on January 8, 2010. Id. ¶¶ 21, 33.

Once the plaintiff establishes his prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. As discussed, Unity's required reduction in force meets this requirement. Therefore, the burden shifts back to Mr. Vormittag who must demonstrate that Unity used the reduction in force as a pretext to retaliate against his daughter. See Hicks, 593 F.3d at 170. At the pretext stage, temporal proximity alone will not suffice. See El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) (per curiam). However, the Second Circuit has noted that:

> A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.

Zann Kwan, 737 F.3d at 846.

Although no one questions that Unity's required reduction in force was a legitimate reason to lay off many employees, Mr. DeMaio offered two different versions of how he decided to fire Mr. Vormittag at his deposition. Mr. DeMaio did state early on that he "laid off the people that were not suited for the jobs that we had going on at the time," Phillips Decl. Ex B, at 102:8–10, but when asked why he chose furlough and then fire Mr. Vormittag, he testified "Why would it be anybody? There was no rhyme or reason. I just had to meet a number," id. at 114:17–18. After the parties took a recess, Mr. DeMaio was questioned by Unity's attorney. He then testified that he had determined Mr. Vormittag "was not one of the best ones left" at the Goldman Sachs job, which factored into the decision to furlough and fire him. Id. at 119:11–12.

"[E]ven during a legitimate reorganization or workforce reduction, an employer may not dismiss employees for unlawful discriminatory reasons," Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 111 (2d Cir. 1992) (internal quotation marks omitted), and Mr.

11

DeMaio's shift in explanations for firing Mr. Vormittag calls his true reasoning into question. Coupled with Mr. Vormittag's testimony that Mr. DeMaio "herded [him] into the private office" and urged him to get his daughter to drop her charge against Unity, a reasonable juror could conclude that Mr. DeMaio used the reduction in force as a pretext for retaliation. Phillips Decl. Ex. A, at 47:5–14. Mr. Vormittag testified that Mr. DeMaio "looked down at floor like he was in disgust with [him]" when he refused and stated that Unity had "never [been] sued before." Id. Moreover, Mr. Vormittag tendered an affidavit stating that Mr. DeMaio told him "that people close to [Mr. Vormittag's] daughter could lose their jobs." Vormittag Aff. ¶ 24. It is for the jury to decide whether this private conversation took place, and, if so, which version they find more plausible. But construing all the evidence in Mr. Vormittag's favor, there is clearly a genuine issue of material fact as to whether Mr. DeMaio fired Mr. Vormittag in retaliation for his daughter's sex discrimination charge.

## CONCLUSION

For the foregoing reasons, Unity's summary judgment motion is granted with respect to Mr. Vormittag's age discrimination claim and denied with respect to his retaliation claim.

SO ORDERED.

Dated: Brooklyn, New York
August 28, 2014

/s/ Judge Raymond J. Dearie
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
RAYMOND J. DEARIE
United States District Judge